IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SANDRA L. SHAHAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 11-428-GMS |

# MEMORANDUM

## I. INTRODUCTION

On May 16, 2011, plaintiff Sandra L. Shahan ("Shahan"), filed this action against defendant Michael J. Astrue, Commissioner of Social Security ("Astrue" or "the Commissioner"), for review of the final decision denying her supplemental security income ("SSI") application under title XVI of the Social Security Act.[1] (D.I. 1; D.I. 18 at 1.) Shahan brought this civil action under 42 U.S.C. § 405(g) as incorporated by 42 U.S.C. § 1383(c)(3). (*Id.*) Presently before the court is Shahan's motion for summary judgment and the Commissioner's cross-motion for summary judgment. (D.I. 14; D.I. 16.) For the reasons that follow, the court will deny Shahan's motion and grant the Commissioner's cross-motion. The court will affirm the decisions of the Administrative Law Judge ("ALJ") and the Appeals Council. The court's reasoning follows.

---

[1] Shahan filed an application for SSI on July 8, 2008. (Tr. at 9.) Shahan's application was denied at pre-hearing levels. (*Id.* at 71–74.) Subsequently, Shahan and a vocational expert testified before the ALJ, Melvin D. Benitz. (*Id.* at 29–52.) On July 7, 2010, the ALJ issued a decision finding that Shahan was not disabled. (*Id.* at 6–24.) The Appeals Council denied Shahan's request for review without substantive explanation. (*Id.* at 1–5; 134–39.)

## II. BACKGROUND

Shahan alleges that she has been unable to work because of her "illnesses, injuries, or conditions" since January 1, 1987.[2] (Tr. at 169.) Shahan was 46 years old when she filed her application for SSI in 2008. (*Id.*) During the time Shahan alleges to be disabled, she reported that she lived alone, prepared meals, completed household chores, shopped for groceries, and used public transportation. (*Id.* at 157–61.) Additionally, Shahan indicated that she spent her time watching television, socializing with friends and family, walking, and going outside. (*Id.*) Shahan reported having no difficulty getting along with family, friends, neighbors, or others. (*Id.* at 162.) Shahan reported that there were no changes in her social activities since her alleged conditions began. (*Id.*) Her ability to walk had also not changed since her alleged conditions began, and she reported being able to walk a half mile. (*Id.* at 161–62.) Rather, Shahan reported having difficulty with seeing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (*Id.* at 162.)

### A. Medical Assessments

#### 1. Mental Impairment

During the relevant time period, Shahan received regular psychological treatment. Psychiatrist Dr. Donald Hazlett provided medication-monitoring once every one or two months. (Tr. at 227–30; 251–52; 302–04.) He reported that Shahan "improved significantly" with medication and that she did not exhibit substantial problems with her motor activity, memory, focus, or concentration. (*Id.* at 229.) After treating Shahan for over a year, Dr. Hazlett assessed

---

[2] Although Shahan stated that she has been disabled for most of her adult life, (Tr. at 140), the period at issue in this case does not begin until after her SSI application was protectively filed. Accordingly, the relevant time period was August 1, 2008, through July 7, 2010. *See* 20 C.F.R. § 416.335 (stating that SSI benefits may not be paid for any period before the month after an SSI application is filed).

2

Shahan with a GAF scores between 60 and 75 in 2009 and early 2010, whereas previously in 2008 it had been in the 50s and 60s.[3] (*Id.* at 227–30; 321–26.) Nonetheless, Dr. Hazlett completed a Mental Residual Functional ("MRF") Questionnaire in January 2010, opining that Shahan would be seriously limited or unable to perform mental work-related functions. (*Id.* at 317–18.)

In January 2009, Dr. John Parker, a state agency psychiatrist, ordered a full psychological profile of Shahan. (*Id.* at 279–80.) Dr. Joseph Keyes, a consultative psychologist, conducted the examination. Aside from noting some limitations, such as a low IQ and poor memory, Dr. Keyes assessed Shahan with a GAF score of 60, finding that she could manage her own funds and that she was capable of exercising basic judgment and making deliberative decisions. (*Id.* at 289–92.) In his MRF form, Dr. Keyes assessed Shahan as having moderately-severe to no restrictions in functioning. (*Id.* at 294–95.)

In November 2008, Dr. Christopher King, a state agency psychologist, reviewed Shahan's evidence; Dr. King found that she did not have a covered mental impairment and that she could perform work that did not require much public contact. (*Id.* at 257–67.) In March 2009, Dr. King reviewed Dr. Keyes' examination notes and explained that his original assessment was consistent with Dr. Keyes' assessment. (*Id.* at 296.) Dr. King reaffirmed his original November 2008 opinion.

In May 2009, Dr. Pedro Ferreira, a stage agency psychologist, reviewed the record and agreed with Dr. King's assessment. (*Id.* at 311.) Similarly, in June 2009, Dr. Hillel Raclaw, a

---

[3] GAF stands for "Global Assessment of Functioning"; it is a statistical tool used by healthcare providers to measure a person's ability to function. The scale ranges from 1–100, in increasing ability to function. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) [hereinafter "DSM-IV-TR"].

stage agency psychologist, reviewed Shahan's record and found that Dr. King's assessment was consistent with all the evidence. (*Id.* at 315.)

2. Physical Impairment

Shahan received an eye examination in September 2008, which revealed that her vision was 20/150 in her right eye and 20/25 in her left eye. (Tr. at 233.) Dr. Lawrence Schaffzin, a state agency ophthalmologist, reviewed the evidence and concluded that Shahan visual condition was not severe. (*Id.* at 283.)

Shahan also sought treatment for leg pain in October and November 2008 for which she was described medication. (*Id.* at 242–43.) Shahan is obese, weighing approximately 220 pounds at 5'1". (*Id.* at 242.) Nonetheless, Dr. M.H. Borek, a state agency physician, opined that Shahan could perform sedentary work requiring only limited movements. (*Id.* at 271–79.) He found that Shahan had no manipulative or visual limitations. (*Id.*) Dr. A. Aldridge reviewed the evidence in May 2009, and also found that Shahn could perform a limited range of light work. (*Id.* at 305–11.)

B.     ALJ Determination

The ALJ ruled that, in light of all the evidence, Shahan was not disabled. Although the ALJ acknowledged that Shahan suffered a number of severe impairments—pertaining to her vision, obesity, and mental capacity—he concluded that these impairments were not of listing-level severity; *i.e.*, they were not covered by 20 C.F.R. § 404. (Tr. at 11–15.) The ALJ also found that Shahan's impairments did not preclude her from obtaining light, unskilled work; the vocational expert identified a number of potential jobs, which Shahan could perform. (*Id.* at 15, 23–24.) The ALJ found that Shahan did not qualify for benefits. (*Id.* at 24.)

## III. STANDARD OF REVIEW

### A. Review of an Agency Decision

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *see also Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, . . . [the court is] bound by those findings, even if . . . [it] would have decided the factual issue differently."). "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry is not whether the reviewing court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

## III. DISCUSSION

Shahan asserts that the ALJ's decision is flawed based on three primary grounds. (D.I. 15 at 3–14.) First, Shahan alleges that she is disabled under listing section 12.05C.[4] (*Id.* at 3–5.) Shahan further argues that the ALJ's decision is legally deficient. (*Id.* at 5–11.) Lastly, Shahan avers that she cannot perform any of the jobs identified by the vocational expert. (*Id.* at 12–14.)

### A. Applicable Statute and Law

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[4] Section 12.05C refers to a listing of disabilities in Appendix 1 to Subpart P of 20 C.F.R. § 404.

5

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has promulgated regulations for determining disability by application of a five-step sequential analysis. *See* 20 C.F.R. § 404.1520. The ALJ, the reviewing Appeals Council, and the Commissioner evaluate each case according to this five-step process until a finding of "disabled" or "not disabled" is obtained. *See id.* § 404.1520(a). The process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *and* has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he or she is capable of performing other work in the national economy. If he or she is incapable, a finding of disability will be entered. Conversely if the claimant can perform other work, he will be found "not disabled."

*Cunningham v. Apfel*, No. 00-693-GMS, 2001 WL 1568708, at *4 (D. Del. Dec. 7, 2001) (paraphrasing the five-step process for determining disability).

The disability determination analysis involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his or her claim by a

6

preponderance of the evidence. At step five, however, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment the claimant is able to perform. *See Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000); *see also Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983). Substantial gainful employment is defined as "work that—(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. When determining whether substantial gainful employment is available, the ALJ is not limited to consideration of the claimant's prior work, but may also consider any other substantial gainful activity which exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A), (2)(A); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

### B. Listing 12.05C and the ALJ's Determination

To be disabled under listing 12.05C, a claimant must have significantly sub-average general intellectual functioning with (1) deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. § 404, subpt. P, app. 1, § 12.05. Shahan contends that she satisfies each of the requirements of listing 12.05C, and is, therefore, entitled to a finding of disability and an award of benefits. (D.I. 15, at 3–4.) Shahan bears the burden of proof.

The court finds that Shahan cannot satisfy her burden and that the ALJ's determination was not legally deficient. The dispute concerns the third element of section 12.05C. The ALJ determined that "[t]he claimant's own statements are inconsistent with a disabling level of physical and mental impairments." (Tr. at 20.) The record shows that, even though the ALJ's

discussion of listing 12.05C was limited, it was supported by substantial evidence. Shahan was indeed assessed with an IQ of 61 (satisfying the second element), but several state agency examiners (King, Ferreira, and Raclaw) found that her impairments did not satisfy the listing because they did not result in severe limitations to her ability to work. The ALJ's decision to discount Dr. Hazlett's assessment was also supported and well reasoned. (*Id.* at 21–22.) The ALJ questioned whether Dr. Hazlett correctly applied the definitions contained in the Social Security Act and its regulations, especially in light of the conflicting interpretations offered by the state agency examiners. (*Id.*) Moreover, the ALJ noted his concerns that Dr. Hazlett may have been influenced by Shahan to offer a particular recommendation in his notes, even though it appeared at odds with the rest of his observations. (*Id.* at 22.)

The court finds that the ALJ's conclusion that Shahan does not satisfy the section 12.05C listing was supported by substantial evidence. As such, it was not legally deficient.

### C. Identified Job Options

Shahan alleges that she cannot perform any of the jobs identified by the vocational expert because they conflict with the *Dictionary of Occupational Titles* (Dep't of Labor, 4th ed. 1991) ("DOT"). (D.I. 15 at 1–2.) The vocational expert identified six potential jobs: hand bander, inspector, price marker, document scanner, surveillance systems monitor, and patcher. Shahan asserts that each of these jobs conflicts with her visual, manipulative, and mental impairments to various degrees, and therefore the ALJ improperly determined that she was "not disabled."

The court disagrees and finds that the Commissioner satisfied his burden in proving that Shahan could perform these jobs and that the ALJ's determination was supported by substantial evidence. Despite Shahan's arguments to the contrary, the jobs listed by the vocational expert do

not require "keen" visual acuity according to the DOT. The vocational expert testified that Shahan possessed the requisite near visual acuity to perform these jobs. (Tr. at 47–49.) Shahan has not established that the vocational expert's testimony was improper.

Shahan's arguments that five of the six jobs require more than a little fine manipulation and dexterity is also not supported by the evidence. First, none of the evaluating physicians opined that Shahan had manipulative limitations. As required by the regulations, impairments must be "medically determinable." *See* 20 C.F.R. § 416.927(a)(1). Moreover, even accepting that Shahan had manipulative and dexterity limitations, the court still finds that the identified jobs do not conflict with the DOT. The DOT confirms that, for the jobs in question, fine manipulation is not required more than one third of time. The vocational expert's testimony was properly considered, and the ALJ's determination was supported.

Finally, Shahan's contends that her mental impairments prevent her from performing the identified jobs. But the identified jobs are unskilled, which, by definition, are simple and routine. Moreover, they require the lowest language levels and minimal reading. The vocational expert's testimony explained that Shahan was capable of performing these tasks; there are no conflicts with the DOT. Thus, the ALJ's acceptance of the vocational expert's testimony was proper.

## V.     CONCLUSION

The ALJ's findings were supported by evidence a "reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Thus, the court will grant the

9

Commissioner's motion for summary judgment, and deny Shahan's motion for summary judgment.

Dated: November 7, 2014

_____
UNITED STATES DISTRICT JUDGE